IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DWIGHT K. BURGESS                                                                    PLAINTIFF

V.                                            NO. 15-5142

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration        DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Dwight K. Burgess, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income benefits (SSI), under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.   Procedural Background:**

Plaintiff protectively filed his applications for DIB and SSI on June 18, 2012, alleging an inability to work since May 7, 2012, due to brain aneurysms, anxiety, and paranoia. (Doc. 13, pp. 142-150, 171, 178). An administrative hearing was held on January 23, 2014, at which Plaintiff appeared with counsel and testified. (Doc. 13, pp. 38-76).

By written decision dated February 28, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – postoperative clipping multiple brain aneurysms; hypertension; cognitive disorder, not otherwise specified (NOS); depression, NOS; anxiety, NOS; and alcohol dependence. (Doc.

1

13, p. 17). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 13, p. 18). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can only occasionally climb, balance, stoop, kneel, crouch and crawl. In addition, he is limited to work that involves simple, routine and repetitive tasks involving only simple, work-related decisions, with few, if any, workplace changes. Lastly, he can have no more than incidental contact with coworkers, supervisors and the general public.

(Doc. 13, p. 20). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would not be able to perform his past relevant work, but there were other jobs Plaintiff would be able to perform, such as production worker (bench final assembler, optical), and escort vehicle driver. (Doc. 13, p. 26).

Plaintiff then requested a review of the hearing decision by the Appeals Council, who considered additional information, and denied that request on April 30, 2015. (Doc. 13, pp. 6-9). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 8). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 12).

The Court has reviewed the entire transcript.[1] The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.   Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583

---

[1] Although the transcript is approximately 1,350 pages in length, it contains numerous duplicate records.

(8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe

physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§404.1520, 416.920   Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);   20 C.F.R. §§404.1520, 416.920, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§404.1520, 416.920.

**III.    Discussion:**

The Court believes that for the reasons set forth below, this matter should be remanded.

In early May of 2012, Plaintiff presented to NMC-Springdale, complaining of frequent headaches. (Doc. 13, p. 326). A brain scan revealed four aneurysms. (Doc. 13, p. 330). Plaintiff was immediately transferred to St. Vincent's Infirmary in Little Rock, and on May 11, 2012, Dr. Ali Krisht performed surgery to repair three aneurysms. (Doc. 13, p. 444). Plaintiff was discharged on May 14, 2012. (Doc. 13, p. 432).

On June 29, 2012, Plaintiff presented himself to Dr. Terry Efird, Ph.D., for a Mental Diagnostic Evaluation. (Doc. 13, p. 423). At the evaluation, Dr. Efird noted that Plaintiff appeared intoxicated. (Doc. 13, p. 424). Dr.Efird recognized some difficulty in estimating a GAF score because of his intoxication.

On July 16, 2012, Dr. Krisht performed a second surgery to repair the fourth aneurysm. (Doc. 13, p. 817). On July 27, 2012, non-examining consultant, Dr. Winston

4

Brown completed a Psychiatric Review Technique form, finding that Plaintiff's alleged mental impairments were non-severe, and noted that "etoh may well be etiology of anger/moodiness/cognitive disorders." (Doc. 13, pp. 504-506).

On August 27, 2012, Plaintiff was having suicidal and homicidal thoughts, and on August 28, 2012, was admitted to Springwoods for four days. (Doc. 13, p. 611). At that time, lab reports revealed a positive for cannabis. (Doc. 13, p. 611). His GAF score on admission to Springwoods was 20, and 40 upon discharge. (Doc. 13, p. 612). It was also reported at that time that Plaintiff was drinking 12 beers a day. (Doc. 13, p. 620).

On September 5, 2012, non-examining consultant, Dr. Dan Gardner, completed a Physical RFC Assessment, concluding that Plaintiff would be able to perform sedentary work, with certain postural limitations. (Doc. 13, pp. 636-643).

On October 2, 2012, Dr. Larry Taylor, of Ozark Guidance (OG), diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Mood disorder, unspecified episodic |
| | Alcohol abuse, unspecified |
| | Amphetamine dependence-sustained full remission |
| Axis II: | deferred |
| Axis III: | Had brain surgery in May and August on 2012 to remove two brain aneurisms. Has blood clot in head |
| Axis IV: | Problems with Primary support, Problems related to Social Environment, Housing Problems, Occupational problems, and Other psychosocial/environmental problems |
| Axis V: | 42 |

(Doc. 13, p. 763).

On October 30, 2012, Dr. Taylor completed a Mental RFC Assessment, and found that Plaintiff could not work in coordination with or proximity to others without being distracted by them; could not make simple work-related decisions; could not complete a normal workday and workweek without interruptions from psychologically based symptoms;

5

could not interact appropriately with the general public; could not get along with coworkers or peers without distracting them or exhibiting behavioral extremes; could not maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and could not function independently. (Doc. 13, p. 821). On that same date, Dr. Taylor wrote a letter "To Whom It May Concern," reporting that Plaintiff was functioning on a GAF score of 30-21 (Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g. sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g. stays in bed all day; no job, home, or friends)). (Doc. 13, p. 823).

On November 1, 2012, Plaintiff's treating physician, Dr. John Kendrick, completed a Physical Medical Source Statement, finding that Plaintiff would be able to perform less than sedentary work, with many limitations. (Doc. 13, pp. 824-828).

On February 22, 2013, non-examining consultant, Dr. Alice Davidson, completed a Physical RFC Assessment, finding that Plaintiff would be able to perform light work with certain postural limitations. (Doc. 13, pp. 784-787). On February 25, 2013, non-examining consultant, Jay Rankin, completed a Case Analysis, stating that new medical records indicated that alcohol was the primary problem. (Doc. 13, p. 796). On February 26, 2013, Dr. Krisht reported that Plaintiff should not lift more than 50 pounds. (Doc. 13, p. 829).

On May 16, 2013, Plaintiff saw Barry Cole, M.D., at OG. Dr. Cole wrote that he was concerned Plaintiff was consuming a six-pack of beer daily, had a past history of amphetamine abuse, now received Xanax from his primary care physician, and was not keeping his appointments. (Doc. 13, p. 848). Dr. Cole reported Plaintiff had a mood disorder, NOS, with continuous alcoholism, and that his mood disorder was likely secondary to his

6

substance use. (Doc. 13,p. 848). Dr. Cole also noted that Plaintiff had constant movement of his legs, his memory was poor, and his concentration was fair. (Doc. 13, p. 848). Dr. Cole advised Plaintiff to stop drinking beer other than near beer, and gave plaintiff a GAF score of 44. (Doc. 13, pp.849-850).

On May 21, 2013, Terry Shott, LPC, of OG, who had previously been counseling Plaintiff, completed a Mental RFC Assessment, finding Plaintiff had no useful ability to function on a sustained basis to maintain attention and concentration for extended periods, and to behave in an emotionally stable manner. (Doc. 13, p. 804). On August 15, 2013, Plaintiff reported to Mr. Shott that his son had committed suicide. (Doc. 13, p. 900).

With respect to Plaintiff's alleged mental impairments, the ALJ found that Dr. Efird's opinion was consistent with the evidence of record as a whole. (Doc. 13, p. 25). The ALJ further found that Plaintiff's low GAF scores would not be of as much significance in determining disability. (Doc. 13, p. 24). The ALJ acknowledged that Plaintiff's treating therapist and doctors at OG had completed mental RFC assessments, which essentially would preclude the Plaintiff from gainful employment. However, the ALJ did not give Dr. Taylor's opinion the weight normally afforded a treating physician because he thought Dr. Taylor only saw Plaintiff one time. (Doc. 13, pp. 24-25). He further gave Mr. Shott's opinion some weight "in that the undersigned concurs that he has limitations that affect his ability to stay focused, concentrate and perform day-to-day activities, albeit not disabling limitations." (Doc. 13, p. 25).

The Court believes it is noteworthy that Dr. Efird examined Plaintiff before his second surgery, before he was committed to Springwoods with suicidal and homicidal behavior, and before he was treated at OG and given GAF scores of 21-50. As the ALJ relied

7

heavily on Dr. Efird's evaluation, and as Plaintiff was intoxicated during that evaluation, the Court believes it is necessary to remand this matter in order for the ALJ to obtain a mental evaluation and mental RFC assessment relating to the relevant time period, from an examining physician, and to re-evaluate Plaintiff's RFC. In addition, the record is replete with instances of Plaintiff's excessive drinking as well as opinions from physicians which indicate the etiology of some of Plaintiff's impairments was alcohol.[2] In fact, the ALJ found alcohol dependence was a severe impairment. Therefore, the Court believes that upon remand, the ALJ should more fully address Plaintiff's alcohol dependence, and if necessary, engage in the "contributing factor" analysis.

The Court also notes that on June 21, 2012, Plaintiff's mother reported that his driver's license had expired and he had not renewed it. (Doc. 13, p. 185). However, one of the jobs the ALJ found Plaintiff would be able to perform was escort vehicle driver. (Doc. 13, p. 26). The ALJ should therefore reconsider the applicability of this job upon remand.

**IV.   Conclusion**:

Accordingly, the Court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, reverses and remands this matter to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).

IT IS SO ORDERED this 27th day of October, 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

---

[2] The Court recognizes that Plaintiff testified at the hearing that he had "just about stopped drinking." He then stated, however, that he had "been stopped for about three months," but also testified that he drank a six-pack a little over three weeks prior to the hearing. (Doc. 13, pp. 41-43).